**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEVIN COIT,** | : | |
| **Plaintiff** | : | **No. 1:20-cv-1075** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **GROHOWSKI, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

This matter is before the Court pursuant to Defendants' motion for summary judgment.
(Doc. No. 39.)  The motion is fully briefed and ripe for disposition.

**I.      BACKGROUND**

On June 27, 2020, pro se Plaintiff Kevin Coit ("Plaintiff"), who is currently incarcerated

at the State Correctional Institution Phoenix in Collegeville, Pennsylvania ("SCI Phoenix"),

initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C.

§ 1983 against Defendants Unit Manager Grohowski ("Grohowski") and Lt. B. O'Boyle

("O'Boyle"), both of whom were employed at the State Correctional Institution Retreat ("SCI

Retreat").  Plaintiff avers that on December 24, 2019, he was transferred to SCI Retreat and

immediately "began to be subjected to retaliatory conduct by the correctional officers."  (Doc.

No. 1 at 4.)  Plaintiff avers that he was denied all of his property and kept confined to his cell for

no reason.  (Id.)  Plaintiff filed a grievance because he had multiple correctional officers "come

to [his] door stating that they knew how to deal with problematic di*kheads."  (Id.)  He spoke to

Lieutenant Click and another unnamed lieutenant about these actions and comments.  (Id. at 5.)

Plaintiff did not receive his property for at least a week.  (Id.)  Plaintiff subsequently received a

response to his grievance from Lieutenant Contreras, who stated that "there was no retaliation by

anyone."  (Id.)

On December 27, 2019, Plaintiff spoke to Defendant Grohowski and told him that he was being denied showers and his property.  (Id.)  He avers that Defendant Grohowski stated "just take it for now we have to get a little even you did break four of our windows."  (Id.)  On March 16, 2020, Plaintiff was scheduled for a phase advancement in the Behavioral Management Unit ("BMU"), but that advancement was denied.  (Id.)  Plaintiff maintains that Defendant Grohowski stated that Plaintiff would be placed on a special treatment plan because he liked to file grievances and "be a little b****."  (Id.)  Plaintiff subsequently filed two (2) grievances.  (Id.)

On March 19, 2020, Plaintiff received a modified phase advancement.  (Id.)  He avers that Defendants told him that he would never be "taken out of handcuffs because they are having to[o] much fun with [his] treatment plan and the fun was just beginning."  (Id.)  That same day, Plaintiff requested his television, and Defendants told the correctional officers in the BMU that Plaintiff could not receive his television because "he called the abuse hotline and filed grievances" against Defendant Grohowski.  (Id.)  Plaintiff subsequently called family members and asked them to call SCI Retreat to ask why Plaintiff could not receive his television.  (Id.)  Plaintiff was "written up by John Doe stating Plaintiff said he was going to file a false [Prison Rape Elimination Act ('PREA') complaint against] Unit Manager Grohowski."  (Id.)

Later that day, Plaintiff was in his cell when Defendant O'Boyle came to his door and said that Plaintiff had to go to "accountability" as part of his treatment plan because he was "such a cry baby and [kept] filing grievances."  (Id. at 6.)  Plaintiff began to harm himself and was taken to the emergency room.  (Id.)  When he returned to SCI Retreat, Defendants ordered that he be placed in a dry cell.  (Id.)  An unnamed correctional officer "started to taunt" him, asking how his "beef" was going with Defendant Grohowski and stating that this is what happens when Plaintiff files grievances.  (Id.)

On March 24, 2020, Plaintiff was again taken to the emergency room.  (Id.)  While there, an unnamed correctional officer told Plaintiff that he felt bad for him.  (Id.)  When Plaintiff asked why, the officer said that Defendants wanted Plaintiff to withdraw some grievances or "things won't be right when [he arrived at his] next jail."  (Id.)  On March 24, 2020, Plaintiff was transferred from the hospital to SCI Rockview, where he was placed on quarantine for fourteen (14) days.  (Id.)  From March 25, 2020, until April 9, 2020, Plaintiff asked about his personal property, only to be told that it was still at SCI Retreat.  (Id.)  On April 10, 2020, Plaintiff "did his inventory and noticed things were missing."  (Id.)  He subsequently filed grievances.  (Id.)  Later that day, Plaintiff tried to withdraw two of his grievances "in order to get [his] property back."  (Id.)  Plaintiff avers that on April 12, 2020, he finished his inventory of his property and noticed that even more things were missing.  (Id. at 7.)  Plaintiff filed several grievances about the matter.  (Id.)  Plaintiff claims that Defendants lost his property and pictures, including pictures of his deceased mother and grandmother, to retaliate against him for submitting grievances.  (Id.)  Based upon the foregoing, Plaintiff asserts the following claims for relief: (1) a First Amendment retaliation claim; (2) an Eighth Amendment claim to be free from cruel and unusual punishment; and (3) a Fourteenth Amendment due process claim.  (Id. at 9.)  He seeks damages.  (Id.)

After being served with Plaintiff's complaint, Defendants initially filed a motion for a more definite statement.  (Doc. No. 12.)  In an Order dated September 30, 2020, the Court denied Defendants' motion and directed them to file their answer within fourteen (14) days.  (Doc. No. 15.)  Defendants filed their answer on October 14, 2020.  (Doc. No. 16.)  Discovery in the above-captioned action closed on April 14, 2021.  Accordingly, in an Order dated April 15, 2021, the Court directed the parties to file any dispositive motions within sixty (60) days.  (Doc. No. 20.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party.  See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine issue.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the

motion "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party.  See White, 862 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  See id. (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."  See L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant.  These rules apply with equal force to all parties.  See Sanders v. Beard, No. 09-cv-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-cv--01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

III.    **STATEMENT OF MATERIAL FACTS**[1]

Plaintiff contends that Defendants "violated his Eighth Amendment rights by subjecting him to cruel and unusual punishment, violated his Fourteenth Amendment right to due process, and violated his First Amendment rights through unlawful retaliation."  (Doc. No. 25 ¶ 3.)  He identifies seven (7) alleged adverse actions, including:

> (i) the denial of property upon arrival at SCI Retreat; (ii) verbal abuse by prison officials on multiple occasions; (iii) confinement to his cell from December 24 to December 27; (iv) a three-day delay in his phase advancement; (v) a retaliatory misconduct; (vi) placement in a dry cell after swallowing batteries and paperclips; and (viii) loss of property after his transfer from SCI Retreat to SCI Rockview.

(Id. ¶ 4.)

Plaintiff arrived at SCI Retreat on December 24, 2019.  (Id. ¶ 5.)  He was housed in the BMU, "which is traditionally a six-month program designed to help inmates with behavioral issues in their reintroduction to general population."  (Id. ¶ 6.)  Plaintiff "has been in the BMU since 2017 and continues to be housed in the BMU at his current prison."  (Id.)  After his arrival,

---

[1] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried."  See M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  See id.  Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  See id.  Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of facts. (Doc. No. 25.)  Although Plaintiff included a responsive statement of facts with his brief in opposition (Doc. No. 26 at 3-5), this responsive statement of facts does not comply with Local Rule 56.1 because it does not include references to the record.  Accordingly, the Court deems the facts set forth by Defendants to be undisputed.  See Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1; United States v. Alberto, No. 3:18-cv-1014, 2020 WL 730316, at *2 (M.D. Pa. Feb. 13, 2020) (concluding that the "[f]ailure to file this [responsive statement of material facts] results in admission of the moving party's statement of facts").

Plaintiff's "property was initially set aside and was not returned to him until, at least, December 27th." (Id. ¶ 7.)  Plaintiff also maintains that he was "confined to his cell for three days and suffered verbal abuse at the hands of multiple correctional officers."  (Id. ¶ 8.)

In January of 2020, Defendant Grohowski advanced Plaintiff's "phase level from four to three-modified."  (Id. ¶ 9.)  Plaintiff had his next phase advancement hearing on March 16, 2020. (Id. ¶ 10.)  He filed a grievance about being denied his phase advancement on March 18, 2020. (Id. ¶ 11.)  Defendant Grohowski responded that, because of the COVID-19 pandemic, hearings "were postponed until March 19; therefore, [Plaintiff] was not denied any phase advancements, he just had to wait one more day."  (Id. ¶ 12.)  Defendant Grohowski referenced "Department policy, Access to Mental Health Care, 13.08.01 § 12(B)(12), which states that inmates will be in phase four for a maximum of 60 days; [Plaintiff] was advanced to phase three within 51 days." (Id.)  Defendant Grohowski responded to Plaintiff's grievance on April 7, 2020, after Plaintiff had received his phase advancement and left SCI Retreat.  (Id. ¶ 14.)  Plaintiff also filed another grievance about not receiving phase three privileges.  (Id. ¶ 15.)  Defendant O'Boyle responded that "he was a phase three-modified level, meaning his privileges were modified."  (Id. ¶ 16.) Defendant O'Boyle responded on March 27, 2020, after Plaintiff had received his phase advancement and left SCI Retreat.  (Id. ¶ 17.)

Plaintiff filed a PREA complaint against Defendant Grohowski, alleging that he was sexually harassing him, on March 19, 2020.  (Id. ¶ 18.)  Plaintiff "could not state how he was allegedly being sexual harassed, neither specifically nor generally, or when he was allegedly sexually harassed."  (Id. ¶ 19.)  Plaintiff received a misconduct for filing a false PREA report and

was sent to an accountability cell.[2]  (Id. ¶ 20.)  Plaintiff subsequently swallowed batteries, staples, and paper clips, and he was taken to the hospital.  (Id. ¶ 21.)  After he returned from the hospital, Plaintiff was placed in a dry cell "to pass the batteries and other things he had swallowed."  (Id. ¶¶ 22-23.)  Plaintiff was upset about being placed in the dry cell, "so he took his dentures out of his mouth, broke a piece off, and swallowed it to try to 'finish' killing himself."  (Id. ¶ 24.)  He was again taken directly to the hospital.  (Id. ¶ 25.)

Plaintiff was transferred directly to SCI Rockview, where he was "placed in a psychiatric observation cell before eventually being moved to the BMU."  (Id. ¶ 26.)  On April 11 and 12, 2020, he filed two (2) grievances stating that he was missing property, "including: pictures, a washtub, extension cord, prayer rug, sweatpants, thermals, shower shoes, and a fan."  (Id. ¶ 27.)  Both grievances were submitted to the grievance coordinator at SCI Rockview.  (Id. ¶ 28.)  On April 30, 2020, Plaintiff submitted a request to his unit manager "demanding to know what will be done to replace his property."  (Id. ¶ 29.)  Unit Manager Hoover responded that he had been in contact with SCI Retreat.  (Id. ¶ 30.)

Plaintiff received a rejection of his grievance, written by Defendant O'Boyle, on May 5, 2020.  (Id. ¶ 31.)  He was told that "property inventory sheets (DC-153s) he had submitted did not match those SCI Retreat had on file."  (Id. ¶ 32.)  Plaintiff "was notified that he needed to submit un-altered and un-doctored versions of his property inventory sheets and, until that time, his grievance was denied."  (Id. ¶ 33.)  Plaintiff never sent the inventory sheets to SCI Retreat. (Id. ¶ 34.)

---

[2] Accountability status is used as a temporary placement for inmates "whose behavior is acutely dangerous to self or others or whose behavior is threatening and disruptive to programming and the operational functioning of the unit.  The inmate on Accountability Status shall be evaluated daily with a plan for his/her timely return to the program."  (Doc. No. 25 ¶ 20 n.2.)

Plaintiff submitted another request to his unit manager, arguing that SCI Rockview was responsible for his lost property and his failure to be reimbursed.  (Id. ¶ 35.)  Unit Manager Hoover responded that Plaintiff's property inventory sheets were "several months old, but he was still doing his best to help."  (Id. ¶ 36.)  Plaintiff then asked for copies of the property inventory sheets used by Defendant O'Boyle to reject his grievance.  (Id. ¶ 37.)  Plaintiff "was informed this was not the proper means of requesting such documentation" and that he should write to SCI Retreat.  (Id. ¶ 38.)  Unit Manager Hoover provided Plaintiff with an envelope to send the original grievance to SCI Retreat again.  (Id. ¶ 39.)  SCI Retreat never received the original grievance and never received Plaintiff's two (2) appeals for this grievance.  (Id. ¶¶ 40-41.)  On June 9, 2020, Plaintiff was instructed to again send the appeals to SCI Retreat.  (Id. ¶ 42.)  Plaintiff again wrote to officials at SCI Rockview, stating that he had sent the original grievances to SCI Retreat but was "under the impression that SCI Rockview officials sent the appeals to SCI Retreat for him."  (Id. ¶ 43.)  Officials responded that Plaintiff "was responsible for sending both the originals and the appeals to SCI Retreat."  (Id. ¶ 44.)

Defendants have also set forth facts regarding relevant Department of Corrections ("DOC") policies.  "Treatment planning may also include variations to the standard phases, treatment goals, and length of time in a phase, privileges, and management of problematic behavior."  (Id. ¶ 45.)  Unit managers do not have the ultimate decision over specialized treatment plans and phase modifications.  (Id. ¶ 46.)  Instead, the "entire behavior modification unit treatment team makes recommendations to the program review committee [('PRC')], which has the final decision-making power."  (Id.)  "Ultimately the PRC, with input from the BMU Treatment Team, has the final decision on awarding or terminating privileges and granting phase

changes."  (Id. ¶ 47.)  Moreover, an inmate in the BMU who displays "misconduct-related

behavior" will "generally serve a period of suspension on Accountability Status."  (Id. ¶ 48.)

## IV.    DISCUSSION

Defendants assert that they are entitled to summary judgment because: (1) Plaintiff's

claims against them in their official capacities are barred by the Eleventh Amendment; and (2)

Plaintiff's First, Eight, and Fourteenth Amendment claims fail as a matter of law.  (Doc. No. 24

at 15.)  The Court considers these arguments in turn below.

### A.    Official Capacity Claims

Plaintiff indicates that he has brought suit against Defendants in both their individual and

official capacities.  (Doc. No. 1 at 4.)  Plaintiff's official capacity claims are "barred by

sovereign immunity."  See Jones v. Unknown D.O.C. Bus Driver and Transp. Crew, 944 F.3d

478, 482 (3d Cir. 2019): see also Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)

(noting that a suit against a state official in his official capacity is a suit against his office and

cannot proceed under § 1983); Kentucky v. Graham, 473 U.S. 159, 165-67 (1985) (holding that

claims for damages against a state officer acting in his official capacity are barred by the

Eleventh Amendment); Wells v. Wetzel, No. 3:16-cv-842, 2021 WL 1197699, at *3 (M.D. Pa.

Mar. 30, 2021) (concluding that state officers were entitled to summary judgment with respect to

the inmate-plaintiff's claims for monetary damages against them in their official capacities).

Accordingly, the Court will grant Defendants' motion for summary judgment with respect to

Plaintiff's official capacity claims against them.

### B.    First Amendment Retaliation Claims

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of

satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a

constitutionally protected activity.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of

prison officials."  See id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  This

requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary

firmness' from exercising his First Amendment rights."  See id. (quoting Suppon v. Dadonna,

2013 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally

protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  See

id. at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287

(1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed

is relevant, but not dispositive, for the purpose of establishing a causal link between the two

events.  See Lape v. Pennsylvania, 157 F. App'x 491, 498 (3d Cir. 2005).  Only when the facts of

a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on

its own, support an inference of causation.  See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503

(3d Cir. 1997).  If a prisoner establishes a prima facie case of retaliation, the burden shifts to

prison officials to show, by a preponderance of the evidence, that "they would have made the

same decision absent the protected conduct for reasons reasonably related to a legitimate

penological interest."  See Rauser, 241 F.3d at 334.  "This is often referred to as the 'same

decision defense.'"  Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016).  If the prison officials

can make this showing, it defeats the retaliation claim.  See Carter v. McGrady, 292 F.3d 152,

159 (3d Cir. 2002).

As noted supra, Plaintiff takes issue with seven (7) different alleged adverse actions taken

by Defendants:

(i) the denial of property upon arrival at SCI Retreat; (ii) verbal abuse by prison officials on multiple occasions; (iii) confinement to his cell from December 24 to December 27; (iv) a three-day delay in his phase advancement; (v) a retaliatory misconduct; (vi) placement in a dry cell after swallowing batteries and paperclips; and (viii) loss of property after his transfer from SCI Retreat to SCI Rockview.

(Doc. No. 25 ¶ 4.)  Plaintiff suggests that Defendants took these actions to retaliate against him for filing grievances and other complaints, such as a PREA complaint against Defendant Grohowski.  (Doc. No. 1 at 9.)

It is well settled that filing grievances and a PREA complaint constitutes protected activity.  See Mearin v. Vidonish, 450 F. App'x 100, 102 (3d Cir. 2011) (grievances); Singleton v. Shearer, No. 1:17-cv-1027, 2019 WL 3337060, at *5 (M.D. Pa. July 25, 2019) (PREA complaint).  Defendants maintain that "six out of seven adverse actions identified by [Plaintiff] cannot be causally connected to any form of protected conduct.  This is because the filing of grievances came after these adverse actions."  (Doc. No. 24 at 26-27.)  Defendants assert that "the only adverse action that occurred after any protected speech by [Plaintiff] would be the refusal to reimburse [Plaintiff] for his lost property."  (Id. at 27.)  Upon review of the record, the Court disagrees.  Plaintiff's verified complaint suggests that Plaintiff began filing grievances on December 24, 2019, the same day that he was transferred to SCI Retreat.  (Doc. No. 1 at 4.)  Plaintiff's verified complaint asserts further that he filed grievances and a PREA complaint prior to each alleged occurrence of adverse action.  The Court, therefore, concludes that Plaintiff has satisfied the first prong for his retaliation claim and will consider the second and third prongs below.

To be actionable under § 1983, the adverse action "need not be great" but "must be more than de minimis."  See McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006).  While a denial of property for a significant period of time may constitute an adverse action, see Bailey v. Jurnak,

No. 3:18-cv-1437, 2019 WL 2488035, at *4 (M.D. Pa. Jan. 3, 2019), <u>report</u> and <u>recommendation</u>
<u>adopted</u>, 2019 WL 995796 (M.D. Pa. Feb. 28, 2019), the Court cannot conclude that the
temporary deprivation of property, which Plaintiff alleges was about a week, constitutes
sufficient adverse action for purposes of a retaliation claim. <u>Cf.</u> <u>Nuñez v. Wertz</u>, No. 3:17-cv-
727, 2017 WL 3868524, at *9 (M.D. Pa. Sept. 5, 2017) (concluding that a temporary
confiscation of legal materials was not sufficient adverse action). Verbal harassment does not
constitute adverse action for purposes of a retaliation claim. <u>See</u> <u>Keziah v. Sup't Kerestes</u>, No.
3:15-cv-2171, 2015 WL 8488426, at *2 (M.D. Pa. Dec. 10, 2015) (citing <u>Burgos v. Canino</u>, 358
F. App'x 302, 206 (3d Cir. 2009)). Likewise, the Court cannot conclude that Plaintiff's
confinement to his cell for December 24-27, 2019, as well as the three (3)-day delay in his phase
advancement constitute sufficient adverse actions for purposes of a retaliation claim. <u>Cf.</u> <u>Lunney</u>
<u>v. Brureton</u>, No. 04 Civ. 2438 (LAK) (GWG), 2007 WL 1544629, at *21 (S.D.N.Y. May 29,
2007) (noting that "[c]ase law suggests that the isolated or sporadic denial of privileges do[es]
not suffice to state a claim of actionable retaliation"). On the other hand, being issued a
retaliatory misconduct, placement in a dry cell, and the loss of property all constitute sufficient
adverse action for purposes of a First Amendment claim. <u>See</u>, <u>e.g.</u>, <u>Mincy v. Chmielsewski</u>, 508
F. App'x 99, 104 (3d Cir. 20130 (loss of property); <u>Smith v. Mensinger</u>, 293 F.3d 641, 653 (3d
Cir. 2002) (retaliatory misconduct); <u>cf.</u> <u>Bracey v. Price</u>, No. 09-1662, 2012 WL 6015727, at *6
(W.D. Pa. Dec. 3, 2012) (suggesting that placement in a hard cell for three (3) days was
"objectively <u>de</u> <u>minimis</u>" to satisfy the second element of a retaliation claim).

With respect to the third prong of a retaliation claim, while causation may be established
by direct or circumstantial evidence, "motivation is almost never subject to proof by direct
evidence." <u>See</u> <u>Watson</u>, 834 F.3d at 422. Thus, motivation is typically demonstrated by

"evidence of either (1) an unusually suggestive temporal proximity between the protected

activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing

that suggests a causal link."  See id.  With respect to the alleged retaliatory misconduct, Plaintiff

asserted in his verified complaint that the misconduct was issued by a John Doe.  (Doc. No. 1 at

5.)  During his deposition, Plaintiff testified that Defendant O'Boyle "said that they heard me on

the phone saying that I was gonna file a PREA on Unit Manager Grohowski.  So they wrote me

up and placed me on accountability—in the accountability cell."  (Doc. No. 24-1 at 56.)

Plaintiff, however, also testified that a lieutenant he did not know was the individual who told

him that he had filed a false PREA complaint against Defendant Grohowski.  (Id. at 59-60.)

       As an initial matter, to the extent Plaintiff's deposition testimony can be construed as

asserting that Defendant O'Boyle was responsible for issuing the misconduct, Plaintiff cannot

rely on contradictory sworn statements to create a genuine issue of material fact for the purpose

of defeating summary judgment.  See Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253

(3d Cir. 2007) (noting that a "sham affidavit is a contradictory affidavit that indicates only that

the affiant cannot maintain a consistent story or is willing to offer a statement solely for the

purpose of defeating summary judgment" and that a "sham affidavit cannot raise a genuine issue

of material fact because it is merely a variance from early deposition testimony, and therefore no

reasonable jury could rely on it to find for the nonmovant"); see also Coit v. Garman, 812 F.

App'x 83, 87 (3d Cir. 2020) (citing Jiminez and concluding that the omission of a "key

complaint allegation from both [the inmate-plaintiff's] deposition testimony and his filings in

response to the summary judgment motion . . . to effectively be a sham affidavit" to which "no

reasonable jury could afford [] evidentiary weight").  In any event, courts have "consistently

rejected retaliation claims 'against one defendant based on [protected activity] against another

[individual]' for lack of retaliatory motive."  See Murray v. Smithbower, No 1:17-cv-127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021) (quoting Victor v. Lawler, 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 201), aff'd, 565 F. App'x 126 (3d Cir. 2014)); see also Royster v. Beard, 308 F. App'x 576, 597 (3d Cir. 2009) (affirming the district court's grant of summary judgment in favor of a defendant on the inmate-plaintiff's claim that he was retaliated against by an individual who was not the target of his protected activity).  Plaintiff, therefore, cannot maintain his retaliation claim based upon the issuance of an alleged retaliatory misconduct.

With respect to placement in a dry cell and the loss (and denial of reimbursement) of Plaintiff's property, Plaintiff's verified complaint suggests that these actions occurred in a close temporal proximity after Plaintiff filed grievances and his PREA complaint.  If a prisoner makes out a prima facie case, the burden shifts to prison officials to demonstrate that "they would have made the same decision absent the protected conduct for reasons related to a legitimate penological interest."  See Rauser, 241 F.3d at 334.  Plaintiff admitted during his deposition that he was placed in the dry cell after swallowing batteries and staples.  (Doc. No. 24-1 at 56, 59-62.)  Plaintiff also admitted that the purpose of a dry cell is to "try to retrieve contraband."  (Id. at 62.)  Upon review of the record, the Court concludes that there is a sufficient quantum of evidence of misconduct to demonstrate that Plaintiff's placement in the dry cell was reasonably related to legitimate penological interests and that he would have been placed in the dry cell regardless of his grievances and PREA complaint.

With respect to the loss (and denial of reimbursement) of his property, the record reflects that on April 11 and 12, 2020, after his transfer to SCI Rockview, Plaintiff filed two (2) grievances stating that he was missing property, "including: pictures, a washtub, extension cord, prayer rug, sweatpants, thermals, shower shoes, and a fan."  (Doc. No. 25 ¶ 27.)  Both grievances

were submitted to the grievance coordinator at SCI Rockview.  (Id. ¶ 28.)  On April 30, 2020,

Plaintiff submitted a request to his unit manager "demanding to know what will be done to

replace his property."  (Id. ¶ 29.)  Unit Manager Hoover responded that he had been in contact

with SCI Retreat.  (Id. ¶ 30.)  Plaintiff received a rejection of his grievance, written by Defendant

O'Boyle, on May 5, 2020.  (Id. ¶ 31.)  He was told that "property inventory sheets (DC-153s) he

had submitted did not match those SCI Retreat had on file."  (Id. ¶ 32.)  Plaintiff "was notified

that he needed to submit un-altered and un-doctored versions of his property inventory sheets

and, until that time, his grievance was denied."  (Id. ¶ 33.)  Plaintiff never sent the inventory

sheets to SCI Retreat.  (Id. ¶ 34.)  As an initial matter, nothing in the record before the Court

suggests that Defendant O'Boyle was responsible for losing Plaintiff's property.  Even so, the

record reflects that Defendant O'Boyle's decision to deny Plaintiff's grievance seeking

reimbursement or replacement of his property was not based upon Plaintiff's filing of grievances

while at SCI Retreat but because of Plaintiff's failure to follow DOC procedure and submit

correct copies of his property inventory sheets.

For the various reasons discussed above, Plaintiff cannot maintain his First Amendment

retaliation claim against Defendants.  Accordingly, the Court will grant summary judgment to

Defendants with respect to this claim.

### C.  Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on

prisoners.  There are several types of Eighth Amendment claims, including claims alleging:

denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement;

the use of excessive force; and failure to protect from assaults by other inmates.  An Eighth

Amendment claim includes both objective and subjective components.  See Wilson v. Seiter, 501

16

U.S. 294, 298 (1991).  Serious hardship to the prisoner is required to satisfy the Eighth

Amendment's objective component.  See id.  The subjective component is met if the person or

persons causing the deprivation acted with "a sufficiently culpable state of mind."  See id.

In order to maintain an Eighth Amendment claim as to one's conditions of confinement, a

plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial

risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk

to his health and safety, and (3) the defendant-official's deliberate indifference caused him

harm."  See Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2015), abrogated on other grounds by

Mack v. Yost, 968 F.3d 311 (3d Cir. 2020).  "[T]he Constitution does not mandate comfortable

prisons."  Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  Therefore, conditions of

imprisonment violate the Eighth Amendment only if they, "alone or in combination . . . deprive

inmates of the minimal civilized measures of life's necessities."  See id. at 347.  Such necessities

include "adequate food, clothing, shelter, and medical care."  See Farmer v. Brennan, 511 U.S.

825, 832 (1994).  Thus, "extreme deprivations are required to make out a conditions-of-

confinement claim."  See Hudson v. McMillian, 503 U.S. 1, 9 (1992).  However, "[s]ome

conditions of confinement may establish an Eighth Amendment violation 'in combination' when

each would not do so alone, but only when they have a mutually enforcing effect that produces

the deprivation of a single, identifiable human need such as food, warmth, or exercise."  See

Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 372 (3d Cir. 2019) (quoting Wilson, 501

U.S. at 304 and Rhodes, 452 U.S. at 347).

In the instant case, Plaintiff cannot maintain his Eighth Amendment claims against Defendants.[3]  First, the loss and/or denial of property does not equate to a sufficiently serious deprivation that gives rise to a claim under the Eighth Amendment.  See Payne v. Duncan, No. 3:15-cv-1010, 2017 WL 542032, at *9 (M.D. Pa. Feb. 9, 2017), aff'd, 692 F. App'x 680 (3d Cir. 2017).  Moreover, while the Court does not condone verbal abuse of a prisoner, the Third Circuit has noted that a prisoner's allegations of verbal harassment, unaccompanied by another injury, are not cognizable under § 1983."  See Sears v. McCoy, 815 F. App'x 668, 670 (3d Cir. 2020); Gandy v. Reeder, 778 F. App's 149, 151 (3d Cir. 2019); Washington v. Rozich, 734 F. App'x 798, 801 (3d Cir. 2018).  Likewise, Plaintiff's confinement to his cell for a three (3)-day period does not constitute cruel and unusual punishment because nothing in the record before the Court suggests that Plaintiff lacked any of the minimal civilized measures of life's necessities.  See Ridgeway v. Guyton, 663 F. App'x 203, 205-06 (3d Cir. 2016); Camp v. Brennan, 54 F. App'x 78, 81 (3d Cir. 2002).  Moreover, any delay in Plaintiff's phase advancement in the BMU as well as the issuance of a misconduct for falsifying a PREA report, which led to Plaintiff's placement on accountability status, do not rise to the level of Eighth Amendment violations, as these are also not conditions that deprived Plaintiff of the minimal civilized measures of life's necessities.

Plaintiff also suggests that his four (4) or five (5)-day placement in the hard cell after he swallowed batteries, staples, and paper clips violated the Eighth Amendment.  As the Third Circuit has noted:

> A 'dry cell' is a cell that lacks water—all standing water has been drained from the toilet, the room's water supply has been shut off, and the sink and toilet have been capped to prevent inmate access.  An inmate may be placed in a dry cell when prison staff have observed the inmate attempt to ingest an item of contraband or they learn that the inmate is attempting to introduce contraband into the prison.  Dry

---

[3] The issues that Plaintiff alleges as Eighth Amendment violations are the same issues Plaintiff raised with respect to his First Amendment retaliation claim.

> cells are used to closely observe the inmate until natural processes allow for the ingested contraband to be retrieved.  To this end, dry cells lack all linens and moveable items other than a mattress, inmates' clothes are exchanged for a simple smock, and their movements are carefully controlled to prevent them from concealing or disposing of any retrievable contraband.

See Thomas v. Tice, 948 F.3d 133, 137 (3d Cir. 2020).  While "administrative confinement in a dry cell is unpleasant and often unsanitary, so long as the conditions of that confinement are not foul or inhuman, and are supported by some penological justification, they will not violate the Eighth Amendment."  See id. at 139.  In Thomas, the Third Circuit concluded that prison officials had not violated the plaintiff's Eighth Amendment rights in connection with his initial four (4)-day confinement in the dry cell.  See id. at 139-40.  In the instant case, Plaintiff does not raise claims regarding any specific deprivations he suffered during his confinement in the hard cell, and the record reflects that he was removed from the hard cell and taken to the hospital after he was observed to have swallowed a piece from his dentures.  (Doc. No. 25 ¶¶ 24-25.)  Plaintiff, therefore, cannot maintain his Eighth Amendment claim regarding his placement in the hard cell, as the record before the Court establishes that such placement had some penological justification. See Thomas, 948 F.3d at 139.  The Court, therefore, will grant Defendants summary judgment with respect to Plaintiff's Eighth Amendment claims.

### D.   Fourteenth Amendment Due Process Claims

Plaintiff next asserts that Defendants violated his due process rights under the Fourteenth Amendment.  (Doc. No. 1 at 9.)  While Plaintiff does not explicitly state how Defendants violated his due process rights, a liberal construction of the complaint leads the Court (and Defendants) to conclude that Plaintiff has stated a "due process violation from his lost property." (Doc. No. 24 at 24.)  However, neither negligent nor intentional deprivations of property by state officials give rise to a due process violation if state law provides adequate post-deprivation

19

remedies.  See Daniels v. Williams, 474 U.S. 327, 328 (1986) (negligent acts of officials causing unintentional loss of property do not violate due process); Hudson v. Palmer, 468 U.S. 517, 533 (1984) (intentional deprivation of property does not violate due process if meaningful post–deprivation remedy for loss is available).

The Third Circuit has held that the DOC's grievance procedure constitutes an adequate post-deprivation remedy.  See Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008); Tillman v. Lebanon Cty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000).  Pennsylvania state law also provides an adequate remedy for prison officials' unlawful deprivation of inmate property.  See 42 Pa. Cons. Stat. Ann. § 8522(b)(3); see also Shakur v. Coelho, 421 F. App'x 132, 135 (3d Cir. 2011) (noting that the Pennsylvania Tort Claims Act provides adequate remedy for willful destruction of property).  In his complaint, Plaintiff asserts that he availed himself of his administrative remedies but received no relief.  Thus, an adequate post-deprivation remedy was available to him.  To the extent Plaintiff asserts that his grievances were mishandled or wrongfully denied, he has not alleged the denial of a federal right.  See Caldwell v. Beard, 324 F. App'x 186, 189 (3d Cir. 2009).  Likewise, if dissatisfied with the responses to his grievances, Plaintiff has a suitable remedy to pursue under the Pennsylvania Tort Claims Act.  See Hernandez v. Corr. Emergency Response Team, 771 F. App'x 143, 145 (3d Cir. 2019) (noting that "[e]ven if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy").  The Court, therefore, will grant summary judgment to Defendants with respect to Plaintiff's Fourteenth Amendment due process claims.

V.      **CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment.  (Doc. No. 23.)  An appropriate Order follows.